**Mohamed AL–FAYED and Punch Limited, Appellants,**

v.

**CENTRAL INTELLIGENCE AGENCY, et al., Appellees.**

**No. 00–5457.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 17, 2001.

Decided July 13, 2001.

Mark S. Zaid argued the cause and filed the briefs for appellants.

Gregg P. Leslie, Lucy A. Dalglish, David L. Sobel, Arthur B. Spitzer and Kate Martin were on the brief for amici curiae Reporters Committee for Freedom of the Press, et al., in support of appellants.

Thomas M. Bondy, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were Wilma A. Lewis, U.S. Attorney at the time the brief was filed, and Mark B. Stern, Attorney, U.S. Department of Justice.

Before: HENDERSON, TATEL, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

This case raises an issue of first impression: the standard of judicial review applicable to agency denials of expedited processing under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. We conclude that district courts must review such denials de novo, rather than defer to agency determinations. We further conclude that the denials of expedition in this case survive de novo review and, accordingly, we affirm the district court's refusal to grant plaintiffs injunctive relief.

## I

The plaintiffs in this case are Mohamed Al Fayed and *Punch* Limited, a British magazine of political satire owned and published by Al Fayed. They seek documents concerning events associated with the death of Diana Spencer, Princess of Wales, and of Al Fayed's son, Dodi Al Fayed. Together with their driver, Henri Paul, the two died in an automobile accident in Paris on August 31, 1997. The French government investigated the accident and concluded that it was caused by Paul's intoxication and excessive speed. First Am. Compl. ¶¶ 14–15.

Plaintiffs allege that the National Security Agency (NSA) may have secretly recorded Princess Diana's telephone conversations. *Id.* ¶ 63. They also contend that following the automobile accident, a former British intelligence officer provided French investigators with evidence that Paul had been secretly employed by the British foreign intelligence service ("MI6"). *Id.* ¶ 18. Plaintiffs further allege, "[u]pon information and belief," that in 1998, at the behest of the British government, the United States denied that former officer entry into this country to tell his story. *Id.* ¶ 20.

Plaintiffs next claim that, later in 1998, Al Fayed was the victim of an attempted fraud by Oswald LeWinter, a man claiming connections to the Central Intelligence Agency (CIA), who tried to sell Al Fayed fabricated documents indicating that MI6 was involved in the automobile crash. After alerting the CIA and Federal Bureau of Investigation (FBI), Al Fayed's representatives arranged to meet with LeWinter in Vienna. When LeWinter arrived, he was arrested and incarcerated by Austrian authorities. *Id.* ¶¶ 24–42. In a post-complaint affidavit, plaintiffs allege that the United States Attorney's Office for the District of Columbia promised to prosecute those involved in LeWinter's fraudulent scheme, but failed to do so. Macnamara Aff. ¶ 25. They further contend that the CIA and FBI may have been involved in efforts to prevent those prosecutions. *Id.*; First Am. Compl. ¶¶ 51, 52.

In July and August 2000, plaintiffs filed FOIA requests with ten federal agencies and agency components, seeking the expedited release of documents relating to the above-described events.[1] Shortly thereafter, they filed a complaint in the United States District Court for the District of Columbia, charging that the agencies had wrongfully withheld the requested records. *See* 5 U.S.C. § 552(a)(4)(B). Plaintiffs also filed a motion for a preliminary injunction directing the agencies to expedite the processing of the FOIA requests. *See id.* § 552(a)(6)(E). In September 2000, the district court denied the request for preliminary injunctive relief, *Al-Fayed v. CIA*, No. 00–cv–2092 (D.D.C. Sept. 20, 2000), and plaintiffs returned to the agencies to supplement the administrative record and to seek expedition through administrative appeals. Two months later, after amend-

---

1. The ten were: the CIA, NSA, FBI, Department of State, Department of Defense, Defense Intelligence Agency, Department of Justice, Executive Office for United States Attorneys, Immigration and Naturalization Service, and United States Secret Service. Plaintiffs' brief advises that since the filing of this appeal, one of the agencies has been voluntarily dismissed from the case and five more have completed processing plaintiffs' underlying document requests. Reply Br. for Pls. at 1 n.1. The decisions of those six agencies, therefore, are no longer subject to appeal. *See* 5 U.S.C. § 552(a)(6)(E)(iv) ("A district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request."). The remaining appellees are the CIA, NSA, FBI, and Department of State.

ing their complaint, plaintiffs filed a second motion asking the court to issue a preliminary injunction requiring expedited processing. The court again denied the motion. *Al-Fayed v. CIA*, No. 00–cv–2092 (D.D.C. Dec. 11, 2000) ("December Opinion").[2]

In its December 2000 opinion, the district court concluded that none of the factors relevant to granting preliminary relief pointed in plaintiffs' favor. Plaintiffs could not show that: (1) they had a substantial likelihood of success on the merits; (2) they would suffer irreparable injury if the injunction were not granted; (3) granting the injunction would not injure other parties (for example, those requestors over whom plaintiffs would take precedence if the injunction were issued); or (4) the public interest would be furthered by the injunction. *Id.* at 4, 13–16. The court focused primarily on the first factor—plaintiffs' likelihood of success—and noted that under FOIA, plaintiffs are entitled to expedited processing of their requests only if they demonstrate a "compelling need" for expedition. 5 U.S.C. § 552(a)(6)(E)(i)(I). As a threshold matter, the court determined that it should not review de novo the agencies' findings concerning "compelling need," but rather should apply "an 'abuse of discretion' or 'arbitrary and capricious' standard of review." December Opinion at 6. Applying that standard, the district court concluded that the agencies did not abuse their discretion in determining that there was no "compelling need" for expedited processing. *Id.* at 13.[3]

## II

Plaintiffs appeal the district court's December 2000 denial of their motion for a preliminary injunction requiring expedited processing of their FOIA requests. The only issue before this court is whether those requests qualify for expedited treatment under the statute. Because the agencies have not yet completed processing the document requests themselves, the sufficiency of their searches for responsive documents, as well as the merits of any exemptions from production they might eventually claim, are not before us.

As the district court noted, in considering a plaintiff's request for a preliminary injunction a court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest. *See, e.g., Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C.Cir.1998). We "review the district court's weighing of the preliminary injunction factors under the abuse of discretion standard, and its

**2.** Plaintiffs' motion was styled as a "Motion for a Temporary Restraining Order and/or Preliminary Injunction, Or, in the Alternative, to Compel Expedited Processing." The district court treated the motion as one seeking a preliminary injunction, noting that the same factors apply in evaluating requests for preliminary injunctions and temporary restraining orders, *see* December Opinion at 4 n.2, and that plaintiffs "offer no additional basis which justifies an order compelling expedited processing," *id.* at 16. Plaintiffs still have not articulated how an "order to compel" would

differ from their requested injunctive relief. In any event, because the grant of any form of relief turns on whether plaintiffs can meet the FOIA criteria for expedited processing, we will treat all three of their requests as essentially equivalent.

**3.** In a footnote, the court stated that it would have reached the same conclusion even if it had applied a de novo standard. December Opinion at 13 n.6; *see infra* note 9.

findings of fact under the clearly erroneous standard. [T]o the extent the district court's decision hinges on questions of law, however, our review is essentially de novo." *Id.* at 1318 (citations and internal quotations omitted). On this appeal, the parties principally dispute the first factor—whether plaintiffs have a substantial likelihood of success on the merits. For the reasons stated in the district court's opinion, we agree that the other factors counsel against granting plaintiffs relief. *See* December Opinion at 14–16. Accordingly, our decision regarding plaintiffs' likelihood of success on the merits will effectively decide whether plaintiffs are entitled to a preliminary injunction. *See Serono Labs., Inc.,* 158 F.3d at 1326.

Plaintiffs raise two challenges to the district court's decision that they are unlikely to succeed on the merits. First, they argue that the court applied an improperly deferential standard of review to the agencies' determinations that there is no "compelling need" for expedited treatment. Plaintiffs claim that the court should have reviewed those determinations de novo— anew, without any deference to the agencies. Second, plaintiffs contend that there is in fact a "compelling need" for expedited treatment, and that the court therefore erred in denying them preliminary relief. The Reporters Committee for Freedom of the Press, joined by other public interest organizations, has filed an amicus curiae brief supporting plaintiffs' contention that de novo review is required, but taking no position as to whether expedited review is warranted in this case. We consider the appropriate standard of review—both for the district court and for this court—in this Part, and the application of that standard to plaintiffs' request for expedition in Part III.

### A

■ The standard of review to be applied by a district court to agency expedi-

tion determinations is a question of law, which this court must itself decide de novo. *Id.* at 1318. The district court concluded that it should apply the deferential standard set forth in the Administrative Procedure Act (APA), which empowers a reviewing court to set aside agency action only when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." December Opinion at 8 (quoting 5 U.S.C. § 706(2)(A)). The APA, however, "provides a default standard of judicial review ... where a statute does not otherwise provide a standard." *Dickson v. Sec'y of Def.,* 68 F.3d 1396, 1404 n. 12 (D.C.Cir.1995); *see Workplace Health & Safety Council v. Reich,* 56 F.3d 1465, 1467 (D.C.Cir.1995). In this case, FOIA sets forth its own standard of judicial review, rendering the APA standard inapposite.

In 1996, Congress amended FOIA to provide for expedited processing of requests for agency records. *See* Electronic Freedom of Information Act Amendments of 1996, Pub.L. 104–231, § 8, 110 Stat. 3048, 3051–52. Pursuant to those amendments, codified at paragraph 6(E) of 5 U.S.C. § 552(a), agencies are to promulgate regulations "providing for expedited processing of requests for records—(I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). Agencies are directed to "process as soon as practicable any request for records to which [they have] granted expedited processing." *Id.* § 552(a)(6)(E)(iii). The amendments further provide that an agency decision "to deny ... a request for expedited processing ... shall be subject to judicial review under paragraph (4), except that the judicial review shall be based on the record before the agency at the time of the determination." *Id.*

■ The cross-referenced paragraph (4) is the provision that authorizes judicial review of an agency's decision to withhold records from a FOIA requestor. It states in relevant part:

On complaint, the district court ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case *the court shall determine the matter de novo,* and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

*Id.* § 552(a)(4)(B) (emphasis added). Although it is not absolutely clear that the cross-reference in paragraph 6(E) was intended to include paragraph (4)'s de novo standard of review, that is surely the most straightforward reading of the statute. Indeed, that reading is virtually compelled by the language of paragraph 6(E), which states that the denial of expedition "shall be subject to judicial review under paragraph (4), *except that* the judicial review shall be based on the record before the agency at the time of the determination." *Id.* § 552(a)(6)(E)(iii) (emphasis added). Because paragraph (6)(E) directs that paragraph (4) shall govern review of denials of expedition with only one exception, and because that exception does not involve the de novo review mandated by paragraph (4), the logical conclusion is that de novo review is the proper standard for

a district court to apply to a denial of expedition.[4]

The government defends the deferential review employed by the district court on three principal grounds. First, it argues that review limited to "the record before the agency at the time of the determination," *id.,* is a hallmark of deferential review under the APA. But while that language plainly instructs courts as to which record to review, and directs them not to look to material submitted after the agency has made its decision, it does not command courts to review that record deferentially rather than de novo. Indeed, that de novo review is compatible with a limitation on the scope of the record to be reviewed is confirmed by another paragraph of FOIA. That paragraph authorizes judicial review of agency decisions regarding fee waivers for processing FOIA requests. *Id.* § 552(a)(4)(A)(vii). Although Congress likewise limited that review "to the record before the agency," it nonetheless expressly provided that "the court shall determine the matter de novo." *Id.*

Seizing upon this express provision for de novo review of fee-waiver decisions, the government next argues that Congress must not have intended that de novo review apply to decisions regarding expedition, else it would have expressly said so— just as it did for fee waivers—rather than ambiguously cross-reference paragraph (4). We disagree. As discussed above, although the cross-reference is not absolutely clear, it can hardly be called ambiguous. Moreover, the provision regarding expedited processing was added to FOIA

---

4. We note that although paragraph (4) also provides that where the agency withholds records, "the burden is on the agency to sustain its action," 5 U.S.C. § 552(a)(4)(B), paragraph (6)(E) expressly provides that it is "the person requesting the records" who must "demonstrat[e] a compelling need" for expe-

dition, *id.* § 552(a)(6)(E)(i)(I); *see also* H.R.Rep. No. 104–795, at 25 (1996) ("The requestor would bear the burden of showing that expedition is appropriate."). At oral argument, plaintiffs agreed that it is their burden to demonstrate "compelling need."

in 1996. At that time, the sections providing for de novo review of decisions to deny fee waivers and to withhold documents were already in place. That being the case, it is not surprising that Congress chose merely to cross-reference an existing paragraph, rather than to restate the applicable standard of review.[5]

Third, the government argues that courts should give deference to the agencies' determinations because the agencies have particular expertise concerning which FOIA requests merit expedition. But even if the statute's language were not dispositive with respect to the standard of review, this would not be a case for deference to agency expertise. FOIA directs the agencies to provide expedited processing where a requestor demonstrates "compelling need," *id.* § 552(a)(6)(E)(i)(II), and there is no reason to believe that the agencies have expertise on that subject.

As one part of its expertise argument, the government contends that an agency is better positioned than a court to assess the volume of other requests pending before the agency. That is true, but irrelevant. Nothing in the statute or the legislative history suggests that "compelling need" turns on the volume of other pending requests. To the contrary, FOIA provides its own definition of "compelling need," a definition that includes no reference to the workload of the agency:

For purposes of this subparagraph, the term "compelling need" means—

(I) that a failure to obtain requested records on an expedited basis ... could reasonably be expected to pose an immi-

nent threat to the life or physical safety of an individual; or

(II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

5 U.S.C. § 552(a)(6)(E)(v). *See also infra* Part III (discussing legislative history).

Noting that the second branch of the above definition of "compelling need" includes a requirement of "urgency to inform the public," the government next argues that, because agencies receive a wide range of FOIA requests, they have expertise regarding the relative urgency of any particular request. But while each agency may be in a position to assess the urgency of a request relative to that of other requests it has previously received, no single agency is positioned to measure the urgency of a request relative to requests received throughout the government. Because "compelling need," like other FOIA terms, sets a government-wide rather than agency-specific standard, such agency-specific "expertise" is of no significance. *See Tax Analysts v. IRS,* 117 F.3d 607, 613 (D.C.Cir.1997) ("The meaning of FOIA should be the same no matter which agency is asked to produce its records.").

Indeed, the government's expertise argument illuminates the larger problem with its plea for deferential review. Were district courts required to defer to agency determinations of "compelling need," they would have to affirm disparate (albeit, reasonable) decisions reached by different agencies regarding the same request. As the government agreed at oral argument,

---

**5.** It is true that Congress could also have used a cross-reference when it added the provision for de novo review of fee-waiver decisions in 1986, because the provision regarding review of withholding decisions was already in place at that time. *See* Pub.L. No. 99–570, § 1803,

100 Stat. 3207, 3207–49, 3207–50 (1986) (codified at 5 U.S.C. § 552(a)(4)(A)). But the decision of the 1986 Congress to restate the standard tells us nothing about the intentions of the 1996 Congress in using a cross-reference.

however, Congress did not contemplate such a result. Indeed, it is precisely because FOIA's terms apply government-wide that·we generally decline to accord deference to agency interpretations of the statute, as we would otherwise do under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See, e.g., Tax Analysts,* 117 F.3d at 613 (noting that "we will not defer to an agency's view of FOIA's meaning" because "[n]o one federal agency administers FOIA" and "[o]ne agency's interpretation of FOIA is therefore no more deserving of judicial respect than the interpretation of any other agency"); *Reporters' Comm. for Freedom of Press v. United States Dep't of Justice,* 816 F.2d 730, 734 (D.C.Cir.1987) (declining to accord *Chevron* deference to Justice Department interpretation of FOIA exemptions because FOIA "applies to all government agencies, and thus no one executive branch entity is entrusted with its primary interpretation"), *rev'd on other grounds,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). For the same reason, we decline to permit district courts to defer to agency determinations of "compelling need."

■ As is true with respect to other FOIA provisions, the provision for expedited processing authorizes an agency to promulgate regulations to effectuate that provision. 5 U.S.C. § 552(a)(6)(E)(i). Although this mandate empowers each agency to issue regulations setting forth the procedures by which it will make expedition determinations,[6] it does not authorize an agency to offer its own definition of "compelling need." That term is defined by FOIA itself, and because the definition applies across the government, district courts may not defer to any individual agency's effort to elaborate upon that definition—whether through case-specific determinations or through regulations. *See, e.g., Pub. Citizen Health Research Group v. FDA,* 704 F.2d 1280, 1287 (D.C.Cir. 1983) (declining to defer to an FDA regulation defining the meaning of "trade secrets" under FOIA, because to do so "would produce an intolerable situation in which different agencies could adopt inconsistent interpretations of the FOIA").[7]

---

**6.** *See* 5 U.S.C. § 552(a)(6)(E)(ii) ("[R]egulations under this subparagraph must ensure— (I) that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request; and (II) expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing.").

**7.** We note one caveat concerning deference to agency FOIA regulations. FOIA directs each agency to promulgate regulations providing for expedited processing, not only "in cases in which the person requesting the records demonstrates a compelling need," but also "in other cases *determined by the agency.*" 5 U.S.C. § 552(a)(6)(E)(i) (emphasis added). According to the legislative history, the latter provision gives an agency "latitude to expand the criteria for expedited access" beyond cases of "compelling need." H.R.REP. No. 104–795, at 26. A regulation promulgated in response to such an express delegation of authority to an individual agency is entitled to judicial deference, *see United States v. Mead Corp.,* —— U.S. ——, ——, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292, —— (2001), as is each agency's reasonable interpretation of its own such regulations, *see United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, ——–——, 121 S.Ct. 1433, 1444–45, 149 L.Ed.2d 401 (2001). We have examined the defendant agencies' FOIA regulations applicable to this case, and conclude that to the extent those regulations expand the criteria for expedited processing beyond "compelling need," the agencies reasonably determined that plaintiffs' requests did not meet the expanded criteria.

## B

Having concluded that a district court must review de novo an agency's denial of a request for expedition under FOIA, there remains the question of what standard this court should apply when reviewing the district court's own decision. The statute itself does not directly address the standard of appellate review.[8] In the typical FOIA case concerning the withholding of requested documents, the appellate standard is rarely in doubt. In such cases, the district court normally has decided an issue, such as the applicability of a claimed FOIA exemption, on summary judgment, thereby reducing the question on appeal to whether there is a genuine issue of material fact regarding the exemption's applicability. *See, e.g., Billington v. United States Dep't of Justice*, 233 F.3d 581, 583–84 (D.C.Cir.2000); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir. 1998). Because the existence of a genuine issue of material fact is itself a question of law, *see Rich v. Dollar*, 841 F.2d 1558, 1561 (11th Cir.1988); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 331 (3d ed.1998), we review such cases de novo, *see Summers*, 140 F.3d at 1080.

In this case, however, the district court did not rule on a motion for summary judgment, but rather ruled on plaintiffs' motion for a preliminary injunction. On appeal from such a ruling, we review the district court's conclusions of law de novo, but review its findings of fact only for clear error. *See Serono Labs., Inc.*, 158 F.3d at 1318; *see also Schlefer v. United States*, 702 F.2d 233, 236 n. 5 (D.C.Cir.

1983) (noting that the court would have employed deferential rather than de novo review had the district court's FOIA decision turned on "resolution of a fact controversy" rather than summary judgment); 1 JAMES T. O'REILLY, FEDERAL INFORMATION DISCLOSURE § 8:35, at 316–17 (3d ed.2000) (noting that appellate courts apply the "clearly erroneous" test in FOIA appeals where "the issue is one of conflicting facts and competing inferences"). The issue, then, is whether a district court's determination of "compelling need" is a question of law or fact.

As we discuss in Part III below, a number of elements go into an analysis of whether "compelling need" exists. Both plaintiffs and the government agreed at oral argument that the ultimate conclusion will often rest on important underlying facts: for example, the credibility of a claimant's allegations regarding governmental activity, the existence of a threat to physical safety, or whether an issue is the subject of current news coverage. District court findings regarding such factual matters are reviewed for clear error. *See Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (noting that "[i]ssues involving credibility are normally considered factual matters"). The ultimate question of whether a plaintiff has demonstrated "compelling need," however, involves the application of a legal standard to a set of underlying facts, and hence may perhaps best be classified as a mixed question of law and fact. *See Pullman–Stan-*

---

8. The cross-referenced judicial review provision states that "[o]n complaint, the district court ... has jurisdiction to enjoin the agency.... In such a case *the court* shall determine the matter de novo...." 5 U.S.C. § 552(a)(4)(B) (emphasis added). Although it

could be argued otherwise, the term "the court" in the second sentence appears to refer to the district court mentioned in the first. *See generally* S.REP. No. 89–813, at 8 (1965) (explaining the importance of a de novo proceeding in the district court).

*dard v. Swint,* 456 U.S. 273, 289–90 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). The appropriate standard of appellate review for such mixed questions is often difficult to determine. *Id. Compare Ornelas,* 517 U.S. at 696–99, 116 S.Ct. 1657 (holding that district court findings of "reasonable suspicion" and "probable cause" should be reviewed de novo), *with Buford v. United States,* 532 U.S. 59, ––– –––, 121 S.Ct. 1276, 1279–81, 149 L.Ed.2d 197 (2001) (reviewing deferentially a district court's decision as to whether prior convictions are "related" under the Sentencing Guidelines), *and Cooter & Gell,* 496 U.S. at 399–405, 110 S.Ct. 2447 (applying unitary abuse-of-discretion standard to review of a district court's imposition of sanctions under Federal Rule of Civil Procedure 11).

For two reasons, we need not decide whether our review of the district court's decision should be deferential or de novo in order to dispose of the present case. First, the district court did not conduct a de novo review to determine "compelling need," but rather deferred to the views of the agencies. *See, e.g.,* December Opinion at 7 ("[T]he Court will not apply de novo review to the agencies' determinations at issue in this case.").[9] Under these circumstances, were we to defer to the district court, we would effectively be deferring to the agencies; thus, no court would have performed the de novo review that the statute requires at least the district court to perform. Second, as discussed below, we would reach the same conclu-

sion as that reached by the district court—that plaintiffs have failed to demonstrate "compelling need"—regardless whether we review the court's determination deferentially or de novo.[10] Accordingly, we will analyze the case using the standard most favorable to the plaintiffs— de novo review—and leave for another day the question of which standard this court should generally apply when reviewing a district court's determination of "compelling need."

### III

We now turn to an examination of plaintiffs' claim that they have "demonstrate[d] a compelling need" for the expedited processing of their FOIA requests. 5 U.S.C. § 552(a)(6)(E)(i)(I). As noted above, FOIA's definition of "compelling need" has two branches: "(I) that a failure to obtain requested records on an expedited basis ... could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v). Plaintiffs claim "compelling need" only under the second branch, and the government does not contest that at least one of the plaintiffs, *Punch* Limited, qualifies as an entity "primarily engaged in disseminating information." Accordingly, the remaining question is whether plaintiffs

---

**9.** Although the district court stated in a footnote that it would reach the same conclusion even if it were to apply a de novo standard, its rationale was that plaintiffs' requests had failed to meet "the requisite agency criteria for expedited processing." December Opinion at 13 n.6. As discussed above, the various agencies' criteria should play no role in a de novo review.

**10.** Indeed, this case is so clear that, even reviewed deferentially, any other conclusion would constitute an abuse of discretion. Hence, there is no reason to remand the case for redetermination by the district court. *Cf. United States v. Fenner,* 147 F.3d 360, 363 (4th Cir.1998) ("We need not remand to permit the district court to exercise its discretion to depart if its decision to do so on remand would constitute an abuse of discretion.").

have demonstrated the requisite "urgency to inform."

The relevant legislative history, to which both the government and appellants refer, offers considerable assistance in interpreting "urgency to inform." As an overarching principle, the legislative history declares that "[t]he specified categories for compelling need are intended to be narrowly applied." H.R.Rep. No. 104–795, at 26 (1996). Congress' rationale for a narrow application is clear: "Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment." *Id.* Indeed, an unduly generous approach would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none.

The legislative history provides the following, more specific guidance as well:

> The standard of "urgency to inform" requires that the information requested should pertain to a matter of a current exigency to the American public and that a reasonable person might conclude that the consequences of delaying a response to a FOIA request would compromise a significant recognized interest. The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard.

*Id.* In addition, the statute requires that the request concern "actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). Thus, in determining whether requestors have demonstrated "urgency to inform," and hence "compelling need," courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the conse-

quences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity. The legislative history also indicates that "[t]he credibility of a requestor" is a relevant consideration. H.R.Rep. No. 104–795, at 26.

■ Plaintiffs' claim of urgency founders upon the first of these factors. Their complaint and request for expedition focuses on records relating to the deaths of Princess Diana and Dodi Al Fayed in a 1997 automobile accident, and specifically on records relating to allegations that the NSA taped the Princess' telephone calls, that in 1998 the United States denied entry to an informant with information about the involvement of MI6 in the accident, and that in 1998 Mohamed Al Fayed was the victim of an attempted fraud. Assuming the credibility of these allegations, which the government disputes, plaintiffs have not demonstrated that their FOIA requests relate to "a matter of a current exigency to the American public." *Id.* All of the events and alleged events occurred two to three years before plaintiffs made their requests for expedited processing. Although these topics may continue to be newsworthy, none of the events at issue is the subject of a currently unfolding story.

Plaintiffs contend that at least one of their requests—that for documents regarding the fraud scheme—does not merely concern a subject of historical interest, but extends to events that occurred just prior to the filing of their amended complaint. At that time, the United States Attorney's Office for the District of Columbia advised Al Fayed's representatives that it had insufficient evidence to prosecute participants in the attempted fraud. Plaintiffs allege that by declining to prosecute, the Office broke its promise to those representatives, perhaps due to pressure from the CIA and FBI. Again putting the

credibility of these disputed allegations to one side, plaintiffs' claims do not meet the standard of "urgency to inform." Even if the information sought is properly characterized as "current," it cannot fairly be said to concern a matter of "exigency to the American public." There is no evidence in the record[11] that there is substantial interest, either on the part of the American public or the media, in this particular aspect of plaintiffs' allegations. Indeed, the record does not contain any news reports on the subject of the United States Attorney's alleged refusal to prosecute, other than reports on the press conference plaintiffs held to announce the filing of their complaint. *See* Pls. Ex. 12 (J.A. 324–329); *see also* December Opinion at 11 n.4. Such evidence is insufficient to demonstrate that the request concerns a matter of current exigency. Moreover, plaintiffs have not demonstrated any "significant adverse consequence" that would result if their request for expedited processing of these or any other documents were denied, and they therefore received the documents later rather than sooner. *See* H.R.Rep. No. 104–795, at 26 ("By requiring a 'compelling need,' the expedited access procedure is intended to be limited to circumstances in which a delay in obtaining information can reasonably be foreseen to cause a significant adverse consequence to a recognized interest.").[12]

## IV

We conclude that a district court must apply de novo review to agency denials of expedited processing under FOIA. In this case, the agencies' denials survive de novo review because plaintiffs have not demonstrated a "compelling need" for the requested records. We do not decide whether plaintiffs will ultimately be entitled to the documents they seek—only that the agencies are not required to give plaintiffs' requests priority over those made by other media representatives or the public at large. The order of the district court, denying plaintiffs' motion for preliminary injunctive relief, is

*Affirmed.*

**11.** *See* 5 U.S.C. § 552(a)(6)(E)(iii) ("[J]udicial review shall be based on the record before the agency at the time of the determination.").

**12.** In their second request for injunctive relief from the district court, plaintiffs suggested that their request was urgent because they " 'question[ed] the integrity and conduct of federal government officials' who 'with the forthcoming change of a presidential administration' " might soon leave the government.

December Opinion at 15 n.8 (quoting Zaid Aff. ¶¶ 10–11). On the record before the agency, the district court properly regarded this argument as speculative, both because there was no evidence that plaintiffs' allegations "involve[d] federal employees who will not remain with the government," and because the claim that public officials cannot be held accountable "if they are no longer with the government is conjectural." *Id.*