NATIONAL DAY LABORER ORGANIZING NETWORK, et al., Plaintiffs,

v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., Defendants.

16–cv–387 (KBF)

United States District Court, S.D. New York.

Signed 02/17/2017

Anthony J. Diana, Therese Craparo, Mayer Brown LLP, Erika Kweon, Reed Smith LLP, Thomas Fritzsche, Benjamin N.Cardozo School of Law, Immigration Justice Clinic, Emilou Harris MacLean, Lindsay Cotten Nash, Peter L. Markowitz, New York, NY, for Plaintiffs.

Arastu Kabeer Chaudhury, Brandon Matthew Waterman, Samuel Hilliard Dolinger, U.S. Attorney's Office, New York, NY, for Defendants.

## MEMORANDUM DECISION & ORDER

KATHERINE B. FORREST, District Judge:

This case concerns a Freedom of Information Act ("FOIA") request submitted by plaintiffs National Day Laborer Organizing Network, Asian Americans Advancing Justice—Asian Law Caucus, and the Immigration Justice Clinic of the Benjamin N. Cardozo School of Law (collectively, "plaintiffs") to various federal agencies seeking records related to the Department of Homeland Security's Priority Enforcement Program. There are now two motions for summary judgment pending before the Court—one motion filed by plaintiffs and one motion filed by certain defendants. This decision addresses plaintiffs' motion.

Prior to the briefing on the two pending motions, the Court ordered the parties to confer and submit a "production grid" containing each agreed upon and disputed production item, custodian, and predicted production date. The parties did so on June 24, 2016. Although they were able to reach some consensus, substantial disagreement remains.

Plaintiffs now seek partial summary judgment "(1) enjoining the Department of Homeland Security ["DHS"], Department of Homeland Security's Office of Civil Rights and Civil Liberties ["CRCL"], and United States Immigration and Customs Enforcement ["ICE"] (collectively, "Defendants") from continuing to violate the Freedom of Information Act, 5 U.S.C. § 552; (2) ordering Defendants to make rolling productions of non-exempt requested records relating to the Priority Enforcement Program; and (3) ordering Defendants to complete the productions by the dates set forth by Plaintiffs in the Production Grid submitted to this Court on June 24, 2016." The core of plaintiffs' challenge is that defendants have improperly delayed in processing plaintiffs' FOIA request and have failed to timely produce responsive records in response to plaintiffs' request as required by FOIA. In opposition, defendants seek what is essentially a stay of this litigation due to "exceptional circumstances," allowing defendants to process plaintiffs' FOIA request and produce records in accordance with the predictive dates proffered by defendants in the production grid.

For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART plaintiffs' motion for partial summary judgment. The Court finds that defendants have not shown the existence of exceptional circumstances to justify all of the predictive dates that they have proffered in the production grid. However, given the breadth of plaintiffs' request, the Court also declines to adopt plaintiffs' alternative predictive dates. Ultimately, the Court concludes that defendants DHS and CRCL shall complete their processing and production of plaintiffs' FOIA request (to be done on a rolling basis) not later than October 31, 2017, and that defendant ICE shall complete its processing and production of plaintiffs' FOIA request (to be done on a rolling basis) not later than July 2,

2018, as set forth in this decision.[1]

## I. BACKGROUND [2]

On March 5, 2015, plaintiffs submitted a 37–page Freedom of Information Act ("FOIA") request to each defendant agency (the "Original Request"). (See Compl. ¶3 & Ex. A, ECF No 1.) In the Original Request, plaintiffs sought records related to the Department of Homeland Security's ("DHS") Priority Enforcement Program ("PEP"), which plaintiffs characterized as "a large-scale deportation dragnet program implemented by the federal government in collaboration with local law enforcement authorities." (Compl. ¶1.) Specifically, plaintiffs sought records "necessary to answer" a series of questions about PEP, including, but not limited to, eight categories of documents: (1) policy documents; (2) data and statistical information; (3) individual records; (4) communications; (5) fiscal impact records; (6) assessment records; (7) records concerning the date of implementation of PEP; and (8) records concerning complaint mechanisms and oversight. (Original Request at 6–21.) Plaintiffs sought expedited processing of their request (id. at 23–24), which defendants denied (Compl. ¶72).

Plaintiffs filed the instant action on January 19, 2016, alleging that defendants "failed to produce any meaningful records responsive to [plaintiffs'] FOIA request." (Compl. ¶3; see also Compl. ¶¶ 104–05.) Plaintiffs also challenge defendants' alleged "improper denial of [plaintiffs'] request for expedited processing." (Compl. ¶¶ 106–07.) Defendants answered plaintiffs' complaint on February 29, 2016. (ECF No. 58.)

On April 14, 2016, plaintiffs submitted to the Court what they described as a "narrowed request that supersedes and, in all respects, stands in place of" the operative portions of plaintiffs' Original Request.[3] (ECF No. 64 Ex. A (the "April 14 Request").) Thereafter, on May 4, 2016, defendants agreed to treat the April 14 Request as the operative FOIA request in this case but moved to strike certain portions of the April 14 Request that the government believed were outside of the scope of plaintiffs' Original Request. (ECF No. 72.) The Court granted in part defendants' motion to strike portions of the April 14 Request. (ECF No. 79.)

On June 24, 2016, pursuant to the Court's order, the parties submitted a production grid, which contained each agreed upon and disputed production item, custodian, and predicted production date[4] regarding the April 14 Request.[5] (ECF No.

---

1. In defendants pending motion for summary judgment, they argue that ICE need not respond to categories 2.A and 4 of plaintiffs' April 14 request because doing so would impose an unreasonable burden. (See ECF Nos. 97, 98.) The Court does not address that issue in this decision. The Court will issue a decision on defendants' pending motion in short order.

2. The Court sets forth only those facts necessary for resolution of the pending motion. A majority of the facts are undisputed.

3. The April 14 Request continued to generally request the same eight categories of documents as the Original Request. (See ECF No. 64 Ex. A.)

4. Defendant U.S. Immigration and Customs Enforcement ("ICE") submitted predictive dates concerning only when they would complete their search for responsive documents. (ECF No. 82.)

5. In the production grid, defendants' predictive dates regarding production by DHS and the Office for Civil Rights and Civil Liberties ("CRCL") for all categories of documents was 9/1/2020. Defendants submitted a letter to the Court on February 13, 2017, updating these predictive date to October 2017. (ECF

82.) The production grid included plaintiffs' alternative proposed dates or, if plaintiffs did not contest any of defendants' predictive dates, a statement to that effect.[6] (Id.) Plaintiffs contested only the predictive dates of defendants DHS, CRCL, and ICE.[7]

Now before the Court is plaintiffs' motion for partial summary judgment "(1) enjoining the Department of Homeland Security, Department of Homeland Security's Office of Civil Rights and Civil Liberties, and United States Immigration and Customs Enforcement (collectively, "Defendants") from continuing to violate the Freedom of Information Act, 5 U.S.C. § 552; (2) ordering Defendants to make rolling productions of non-exempt requested records relating to the Priority Enforcement Program; and (3) ordering Defendants to complete the productions by the dates set forth by Plaintiffs in the Production Grid submitted to this Court on June 24, 2016." (ECF No. 89.)

## II. LEGAL STANDARDS

### A FOIA

" 'FOIA was enacted to promote honest and open government' and 'to ensure public access to information created by the

government in order to hold the governors accountable to the governed.' " Long v. Office of Pers. Mgmt., 692 F.3d 185, 190 (2d Cir. 2012) (internal citations omitted). Accordingly, FOIA requires agencies, in response to duly made demands, to timely produce requested documents, or to provide justification why the documents may be exempt from production. See 5 U.S.C. § 552. The briefing submitted by the parties before this Court demonstrates some confusion regarding the applicable timeframes imposed by the FOIA. These time frames are central to the present motion; the Court therefore provides the following overview.

FOIA requires that "[e]ach agency, upon request for records ... determine within 20 days ... after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor ...." Id. § 552(a)(6)(A)(i)(I); see also Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n ("CREW"), 711 F.3d 180, 184 (D.C. Cir. 2013)).[8] "If the agency does not make a 'determination' within the relevant statutory time period, the requester may file suit without exhausting administrative appeal remedies."[9]

No. 129.) Defendants' predictive dates for ICE ranged from 7/25/16 to 12/19/16 for the different categories of documents. (Id.)

6. Plaintiffs proposed alternative dates regarding DHS and CRCL for all categories of documents were 12/15/16. (ECF No. 82.) Plaintiffs proposed alternative dates (for complete production) regarding ICE ranged from 8/1/16 to 2/15/17 for different categories of documents. (Id.)

7. The parties jointly amended the production grid on August 4, 2016. (ECF No. 88.) Such amendments do not impact the instant dispute.

8. An agency may extend the time limit to up to 30 working days in "unusual circum-

stances." 5 U.S.C. § 552(a)(6)(B)(i). This provision is not at issue in this case.

9. The Second Circuit does not appear to have addressed what constitutes a "determination." The D.C. Circuit recently addressed this question for the first time. See CREW, 711 F.3d at 185. The D.C. Circuit explained: "The statute requires that, within the relevant time period, an agency must determine whether to comply with a request—that is, whether a requester will receive all of the documents the requester seeks. It is not enough that, within the relevant time period, the agency simply decides to later decide. Therefore, within the relevant time period, the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as

Id. at 185. Once a requester has filed suit, the Court may extend an agency's response time if it is able to demonstrate "exceptional circumstances" to the Court. 5 U.S.C. § 552(a)(6)(C)(i).

The FOIA does not define "exceptional circumstances," but the statute nevertheless provides some guidance: "[T]he term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests. . . . Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) . . . after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist." Id.; see also CREW, 711 F.3d at 185 & n.2; Open America v. Watergate Special Prosecution Force, 547 F.2d 605, 616 (D.C. Cir. 1976). If exceptional circumstances exist, then so long as "the agency is exercising due diligence in responding to the request, the Court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i).

"To be clear, a 'determination' does not require actual production of the records to the requester at the exact time that the 'determination' is communicated to the requester. Under the statutory scheme, a distinction exists between a 'determination' and subsequent production. As to actual production, FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typ-

ically would mean within days or a few weeks of a 'determination,' not months or years." CREW, 711 F.3d at 188 (emphasis in original) (citing 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(C)(i)) (other citation omitted). In sum, "within 20 working days, an agency must process a FOIA request and make a 'determination.' At that point, the agency may still need some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce. The agency must do so and then produce the records 'promptly.'" Id. at 189.

There is one additional wrinkle that is relevant to this case. The FOIA requires agencies to provide for expedited processing of requests for records in certain cases. See 5 U.S.C. § 552(a)(6)(E)(i). As relevant here, expedited processing is warranted only "in cases in which the person requesting the records demonstrates a compelling need." Id. § 552(a)(6)(E)(i)(I). The FOIA defines "compelling need" as follows:

(I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

(II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

Id. § 552(a)(6)(E)(v). Agencies are directed to "process as soon as practicable any request for records to which [they have] granted expedited processing." Id. § 552(a)(6)(E)(iii). The decision by an

---

the scope of the documents that the agency plans to withhold under any FOIA exemptions." Id. at 186; see also id. at 188 ("[I]n order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and

review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse.").

agency to deny a request for expedited processing is subject to judicial review based on the record before the agency at the time of its determination. Id.

## B. SUMMARY JUDGMENT

■ FOIA actions are typically and appropriately resolved on summary judgment. See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011); see also Fox News Network, LLC v. U.S. Dep't of the Treasury, 739 F.Supp.2d 515, 532 (S.D.N.Y. 2010) ("Summary judgment is the preferred vehicle for resolving FOIA cases.").

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).

## III. DISCUSSION

### A. Expedited Processing

■ Plaintiffs seek expedited processing of their April 14 Request.[10] As discussed above, a requester seeking expedited processing must show a "compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(I). While the burden is on the agency to sustain its action in cases involving the improper withholding of records, 5 U.S.C. § 552(a)(4)(B), the requestor has the burden to "demonstrate[] a compelling need" for expedited processing, 5 U.S.C. § 552(a)(6)(E)(i). See Al–Fayed v. CIA, 254 F.3d 300, 305 n.4 (D.C. Cir. 2001). As relevant here, to demonstrate a "compelling need," plaintiffs must show that they are "primarily engaged in disseminating information" and an "urgency to inform the public concerning actual or alleged Federal Government activity."[11] Id. § 552(a)(6)(E)(v); see also Al–Fayed, 254 F.3d at 303. The Court determines that plaintiffs have failed to establish that they are primarily engaged in disseminating information and therefore cannot demonstrated that they are entitled to expedited processing.

There is little case law defining who qualifies as an individual "primarily en-

---

10. Although plaintiffs did not raise the issue of expedited processing in their opening brief, they did so in their Original Request, complaint, and reply brief. (See Reply Memorandum of Law of Plaintiffs in Support for Partial Summary Judgment, ECF No. 111, at 9–14 & n.17.) Defendants address the issue throughout their briefing, and thus have waived any potential preservation objection.

11. Plaintiffs do not allege "that a failure to obtain requested records on an expedited basis ... could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," which provides an alternate ground for "compelling need" under the statute. 5 U.S.C. § 552(a)(6)(E)(v).

gaged in disseminating information." FOIA's legislative history, however, declares that "[t]he specified categories for compelling need are intended to be narrowly applied." H.R. REP. NO. 104–795, at 26 (1996); see also Al–Fayed, 254 F.3d at 310. The rationale for narrow application is clear: "Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requesters who do not qualify for its treatment." H.R. REP. NO. 104–795, at 26 (1996). "Indeed, an unduly generous approach would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." Al–Fayed, 254 F.3d at 310.

Accordingly, "[c]ourts regularly find that reporters and members of the media qualify" as those primarily engaged in disseminating information. Landmark Legal Found. v. EPA, 910 F.Supp.2d 270, 275 (D.D.C. 2012). However, at least one court has denied expedited to a group engaged in both litigation and information dissemination. See ACLU of N. Cal. v. DOJ, No. C 04-4447 PJH, 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005) (refusing to hold that ACLU was primarily engaged in information dissemination despite the fact that it sent a bi-monthly newsletter to 40,000 people, maintained a website, and issued right-to-know documents, press releases, brochures, and pamphlets on civil liberties). Similarly, another court denied expedited processing where the plaintiff stated that "as part of its mission as a tax-exempt, public interest law firm, [it] inves-

tigates, litigates, and publicizes instances of improper and/or illegal government activity" and that "[a]mong [its] primary activities is to disseminate to the public about the conduct of governmental agencies." Landmark Legal Found, 910 F.Supp.2d at 276 (emphasis and second and third alterations in original); see also Treatment Action Grp. v. FDA & Dep't of Health & Human Servs., No. 15-CV-976 (VAB), 2016 WL 5171987, at *7 (D. Conn. Sept. 20, 2016) ("Courts generally only find that a plaintiff is primarily engaged in information dissemination if information dissemination is the primary activity of the organization, to the exclusion of other main activities.").

Here, plaintiffs have failed to show that they are "primarily engaged in disseminating information." In their expedited processing request, all that plaintiffs asserted was that two of the plaintiffs "maintain websites that receive many visits, analyze public records regarding local law enforcement compliance with ICE holds, and will expand to include information regarding notification requests from ICE related to the Priority Enforcement Program, and will widely publish and disseminate that information to the press and to the public." (Original Request at 11–12.) This is plainly insufficient to meet the required showing that any of plaintiffs are "primarily engaged in disseminating information."[12] 5 U.S.C. § 552(a)(6)(E)(v) (emphasis added); see also Landmark Legal Found., 910 F.Supp.2d at 276; ACLU of N. Cal., 2005 WL 588354, at *14.

 In a reply declaration submitted in support of their motion for partial sum-

---

12. The cases cited by plaintiffs are distinguishable. See Leadership Conference on Civil Rights v. Gonzales, 404 F.Supp.2d 246, 260 (D.D.C. 2005) (finding that the requester was primarily engaged in disseminating information based on the assertion that its "mission is to serve as the site of records for relevant and up-to-the minute civil rights news and information"); ACLU v. DOJ, 321 F.Supp.2d 24, 29 n.5 (D.D.C. 2004) (finding that the requester was primarily engaged in disseminating information because it was a "representative of the news media").

mary judgment, plaintiff National Day Laborer Organizing Network ("NDLON") asserts for the first time that "[d]isseminating information is the primary activity through which NDLON accomplishes its mission." (Newman Decl. ¶ 22, ECF No. 112–3.) However, FOIA limits the Courts review of [a]gency action to deny or affirm denial of a request for expedited processing" to "the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii). The Court therefore declines to consider this statement—made for the first time during this litigation—which is outside of the record before defendants at the time of their denial of plaintiffs' request for expedited processing. In any event, this statement would not change the Court's determination. Even if disseminating information is a primary activity of NDLON, this does not necessarily mean that NDLON is primarily engaged in disseminating information.[13] See Landmark Legal Found., 910 F.Supp.2d at 276 (plaintiff's claim that "among its primary activities is to disseminate to the public about the conduct of governmental agencies" was "not sufficient to show that [plaintiff] is primarily, and not just incidentally, engaged in information dissemination"); see also ACLU of N. Cal., 2005 WL 588354, at *14.

Accordingly, plaintiffs have not demonstrated that they are "primarily engaged in disseminating information" and therefore cannot establish that they are entitled to expedited processing.[14]

## B. DEFENDANTS' SEARCH AND PRODUCTION OF RECORDS

The gravamen of plaintiffs' challenge is that, even if they are not entitled to expe-

dited processing of the April 14 Request, defendants have improperly "failed to produce any meaningful records responsive to [plaintiffs'] FOIA request" and that defendants proposed predictive dates as set out in the production grid are unreasonable. (Compl. ¶3, see also Compl. ¶¶ 104–05; Plaintiffs' Supplemental Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment ("Mem. in Supp."), ECF No. 94, at 15–18.) Defendants have produced some records but continue to search for and have yet to make a determination regarding other records requested by plaintiffs. Thus, there is no dispute that defendants have failed to make a determination on plaintiffs' April 14 Request in accordance with the time period specified by the FOIA. Rather, defendants seek what is essentially a stay of this litigation, allowing defendants to process plaintiffs request and produce records in accordance with the predictive dates proffered by defendants. (See Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment Seeking Expedited Treatment of Their FOIA Request by DHS, CRCL, and ICE ("Mem. in Opp."), ECF No. 96, at 15–19.) Defendants argue that such a stay—and their proposed predictive dates—are appropriate because of the existence of "exceptional circumstances." (Id. at 16–17.) Plaintiffs disagree, and have proposed their own set of alternative dates. (See ECF No. 82.)

As discussed below, the Court finds that defendants have not shown the existence of exceptional circumstances sufficient to justify all of the predictive dates that they

---

13. Indeed, the same reply declaration explains that NDLON's mission is "to improve the lives of day laborers in the United States." (Newman Decl. ¶ 1.)

14. Accordingly, the Court need not, and does not, address whether there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v).

have proffered. However, the Court also declines to adopt plaintiffs' proposed alternative dates.

▮ When, as here, an agency does not respond to a FOIA request in accordance with the time period specified by the statute, a requester may seek judicial review "to enjoin the agency from withholding agency records and to order the production of agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B); see Bloomberg, L.P. v. FDA, 500 F.Supp.2d 371, 374 (S.D.N.Y. 2007). Once a requester has filed suit, however, the Court may extend an agency's response time if it is able demonstrate "exceptional circumstances" to the Court. 5 U.S.C. § 552(a)(6)(C)(i); see also CREW, 711 F.3d at 185 & n.2; Open America, 547 F.2d at 616. Exceptional circumstances exist where: (1) the agency is deluged with a volume of requests for information on a level unanticipated by Congress; (2) existing agency resources are inadequate to deal with the volume of requests within the time limits established by § 552(a)(6)(C); and (3) the agency can show that it is exercising due diligence in processing the request. See Open America, 547 F.2d at 616; Bloomberg, 500 F.Supp.2d at 374.

▮ Defendants have not shown the existence of exceptional circumstances here. Indeed, although defendants spend some time explaining their current docket of FOIA requests (see Mem. in Opp. at 3–4, 16–17), as well as the potential volume of documents responsive to the April 14 Request (see Mem. in Opp. at 16), defendants do not address at all whether they currently face a volume of requests on a level unanticipated by Congress. This is insuffi-cient, as the FOIA makes clear that "the term 'exceptional' circumstances' does not include a delay that results from a predictable agency workload of requests ... unless the agency demonstrates reasonable progress in reducing its backlog of pending requests. ..." 5 U.S.C. § 552(a)(6)(C)(i); see also CREW, 711 F.3d at 185 & n.2; Bloomberg, 500 F.Supp.2d at 374–75. Defendants do not allege that they have made reasonable progress in reducing any existing backlog of pending requests.[15]

▮ Although the Court does not find that exceptional circumstances exist to justify defendants' proposed predictive dates, the Court is mindful of the strain that defendants' FOIA responsibilities may pose. As the D.C. Circuit has noted, it is "a practical impossibility for agencies to process all [FOIA] requests completely within twenty days." CREW, 711 F.3d at 189 (alteration in original). The Court is particularly mindful in this case given the significant breadth of plaintiffs' request and plaintiffs' failure to effectively narrow their request at the administrative stage and during this litigation. The FOIA instructs that courts are to consider a "[r]efusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) ... after being given an opportunity to do so by the agency to whom the person made the request." 5 U.S.C. § 552(a)(6)(C)(i); see CREW, 711 F.3d at 185 & n.2. The Court therefore declines to adopt plaintiffs' proposed predictive dates, which defendants argue would be nearly impossible to comply with.

15. In their sur-reply, defendants essentially concede that they are not seeking to demonstrate the existence of exceptional circumstances based on a backlog of requests. (See Surreply Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment Seeking Expedited Treatment of Their FOIA Request by DHS, CRCL, and ICE, ECF No. 113, at 4 n.4.)

Having considered the parties' respective proposed predictive dates, as well as the various arguments made and papers submitted in connection with this motion, the Court hereby ORDERS defendants DHS and CRCL to complete their processing and production of all responsive documents not later than October 31, 2017, and defendant ICE to complete its processing and production of all responsive documents not later than July 2, 2018. Furthermore, defendants should produce those documents that they identify as responsive to plaintiffs' request on a rolling basis. The Court determines that this schedule provides a reasonable time frame for the government to respond to plaintiffs' request.[16] The Court notes that it will issue a decision on defendants' motion for summary judgment in short order, which may impact the universe of documents that defendants are required to produce.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is GRANTED IN PART AND DENIED IN PART, as set forth in this decision. The Clerk of Court is directed to terminate the motion at ECF No. 89.

SO ORDERED.

---

**16.** Again, the Court is not blind to the difficulties federal agencies generally, and defendants in this case, may have complying with the FOIA. But such policy concerns are largely legislative, not judicial. As the Ninth Circuit has explained, "FOIA doubtless poses practical difficulties for federal agencies, federal agencies can educate Congress on the practical problems they have, and attempt to persuade Congress to change the law or provide additional funds to achieve compliance. So long as the Freedom of Information Act is the law, we cannot repeal it by a construction that vitiates any practical utility it may have." Fiduccia v. DOJ, 185 F.3d 1035, 1041 (9th Cir. 1999).