# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 16, 2012          Decided April 2, 2013

No. 12-5004

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
APPELLANT

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00951)

———

*Anne L. Weismann* argued the cause for appellant. With
her on the briefs was *Melanie Sloan*.

*Julie A. Murray* and *Adina H. Rosenbaum* were on the
brief for *amici curiae* Public Citizen, et al. in support of
appellant.

*Steve Hajjar*, Attorney, Federal Election Commission,
argued the cause for appellee. With him on the brief were
*Anthony Herman*, General Counsel, and *David Kolker*,
Associate General Counsel. *Sarang V. Damle* and *Michael S.
Raab*, Attorneys, U.S. Department of Justice, entered
appearances.

Before: GRIFFITH and KAVANAUGH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:   This case presents an important question of procedure under the Freedom of Information Act:   When must a FOIA requester exhaust administrative appeal remedies before suing in federal district court to challenge an agency's failure to produce requested documents?

As a general matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress.  But if an agency does not adhere to certain statutory timelines in responding to a FOIA request, the requester is deemed by statute to have fulfilled the exhaustion requirement.  *See* 5 U.S.C. § 552(a)(6)(C)(i).

To trigger the exhaustion requirement, an agency must make and communicate its "determination" whether to comply with a FOIA request – and communicate "the reasons therefor" – within 20 working days of receiving the request, or within 30 working days in "unusual circumstances."  *Id.* § 552(a)(6)(A)(i), (a)(6)(B)(i).  If the agency has made and communicated its "determination" in a timely manner, the requester is required to administratively appeal that "determination" before bringing suit.  But if the agency has not issued its "determination" within the required time period, the requester may bring suit directly in federal district court without exhausting administrative appeal remedies.

The exhaustion issue in this case boils down to what kind of agency response qualifies as a "determination." In particular, when an agency responds to a request within 20 working days but merely tells the requester that the agency will produce non-exempt responsive documents and claim exemptions in the future, is that a "determination" within the meaning of the statute, as defendant FEC argues? Or must the agency, even if it need not produce the documents within 20 working days, at a minimum indicate the scope of the documents it will produce and the exemptions it will claim, as plaintiff CREW argues?

Based on the language and structure of FOIA, we agree with CREW. In order to make a "determination" within the statutory time periods and thereby trigger the administrative exhaustion requirement, the agency need not actually produce the documents within the relevant time period. But the agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents.

In this case, the FEC did not make such a "determination" within the statutory time period. As a result, CREW was not required to exhaust administrative appeal remedies before filing its FOIA suit. We reverse the contrary judgment of the District Court and remand for further proceedings.

I

Citizens for Responsibility and Ethics in Washington – known as CREW – is a nonprofit organization that, among other things, advocates for the right of citizens to know about the activities of government officials. CREW pursues that

objective through the acquisition and dissemination of information about public officials and federal agencies.

On March 7, 2011, CREW submitted a FOIA request to the Federal Election Commission seeking several categories of records, including certain correspondence, calendars, agendas, and schedules of the Commissioners.

On March 8, the day after the FOIA request was received, the FEC emailed CREW to acknowledge receipt of the request. In several conversations that took place over the next few weeks, CREW agreed to exclude certain categories of documents from the FEC's initial search for records. The FEC in turn agreed to provide non-exempt responsive documents (and thus also claim exemptions over any withheld documents) on a rolling basis in the future. But by May 23, more than two months later, CREW had not received any documents, nor had it received a more specific statement about what documents the FEC would produce and what exemptions the FEC would claim. CREW therefore filed suit in District Court, alleging that the FEC had not responded to the FOIA request in a timely fashion and had wrongfully withheld records under FOIA.

As of May 23, the FEC had begun – but had not completed – gathering and reviewing potentially responsive records. Subsequently, on June 15, 21, and 23, the FEC provided CREW with a total of 835 pages of documents. The agency's June 15th production was accompanied by a letter stating in part:

> The FEC is continuing to process your request and has produced with this letter an initial round of responsive records. You will continue to receive additional responsive records on a rolling basis. Upon the agency's

final production of records, you will receive a decision letter that will include information regarding your appeal rights. Today's letter does not constitute a final agency decision, and thus is not subject to appeal.

CREW Opposition to Motion to Dismiss at Exhibit B, *CREW v. FEC*, No. 11cv951 (D.D.C. July 7, 2011). The FEC sent a similar letter with its June 21st production to CREW.

Along with its final June 23rd production, the FEC informed CREW that the FEC had withheld some documents and had redacted others in accordance with FOIA Exemptions 4, 6, and 7(C). *See* 5 U.S.C. § 552(b)(4), (b)(6), (b)(7)(C). For the first time, the June 23rd letter also advised CREW of its right to administratively appeal any adverse FOIA determination.

On June 23 – the same day that it produced its final round of responsive documents – the FEC moved in the District Court to dismiss CREW's complaint, or, in the alternative, for summary judgment. First, the FEC contended that CREW's challenge to the agency's delay in responding to a FOIA request was moot given that the agency had now responded. Second, the FEC argued that CREW had failed to exhaust administrative appeal remedies before bringing suit.

The District Court held that the case was not moot. But the District Court granted the FEC's motion for summary judgment based on CREW's failure to exhaust administrative appeal remedies. *See CREW v. FEC*, 839 F. Supp. 2d 17, 29 (D.D.C. 2011). We review the District Court's grant of

6

summary judgment de novo. *See Blackwell v. FBI*, 646 F.3d 37, 39 (D.C. Cir. 2011).[1]

II

In the District Court, the FEC argued that its production of responsive documents had rendered CREW's suit moot. Although the parties do not raise the mootness issue on appeal, the Court must independently consider its own jurisdiction. *See Mine Reclamation Corp. v. FERC*, 30 F.3d 1519, 1522 (D.C. Cir. 1994). We agree with the District Court that the case is not moot. CREW's complaint not only asserted that the FEC failed to respond to CREW's request in a timely fashion, but also raised a substantive challenge to the agency's withholding of responsive, non-exempt records. Even now, CREW continues to seek relief from the FEC's alleged failure to produce all records responsive to CREW's request. Therefore, the case is not moot.

III

The question presented concerns when a FOIA requester must exhaust administrative appeal remedies before filing suit.

---

[1] The FEC is an independent agency and was represented in the District Court and in this Court by FEC attorneys. *See generally Humphrey's Executor v. United States*, 295 U.S. 602 (1935). Because of the potential importance of this case to the Executive Branch as a whole, this Court invited and received supplemental briefing from the Department of Justice, which represents and provides legal advice to the President and the executive agencies. The Department of Justice generally agreed with the legal position advanced by the FEC.

A FOIA requester is generally required to exhaust administrative appeal remedies before seeking judicial redress. *See Hidalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003); *Oglesby v. Department of the Army*, 920 F.2d 57, 61-62 (D.C. Cir. 1990). But if an agency fails to make and communicate its "determination" whether to comply with a FOIA request within certain statutory timelines, the requester "shall be deemed to have exhausted his administrative remedies." 5 U.S.C. § 552(a)(6)(C)(i).

The statutory timeline relevant to this case specifies that, once an agency receives a proper FOIA request, the agency shall:

> determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination.

*Id.* § 552(a)(6)(A)(i).

The 20-working-day timeline is not absolute. In "unusual circumstances," an agency may extend the time limit to up to 30 working days by written notice to the requester. *Id.* § 552(a)(6)(B)(i). Such unusual circumstances include:

> (I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;
> (II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

(III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

*Id.* § 552(a)(6)(B)(iii).

If the agency does not make a "determination" within the relevant statutory time period, the requester may file suit without exhausting administrative appeal remedies.  Once in court, however, the agency may further extend its response time if it demonstrates "exceptional circumstances" to the court.[2]  (Note that "exceptional circumstances" is different from "unusual circumstances.")  If exceptional circumstances exist, then so long as "the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records."  *Id.* § 552(a)(6)(C)(i); *see also Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976).

---

[2] Although the statute does not define "exceptional circumstances," it provides some directional signals:  "[T]he term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests. . . . Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) . . . after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist . . . ."  5 U.S.C. § 552(a)(6)(C)(ii)-(iii).

In short, a requester must exhaust administrative appeal remedies if the agency made and communicated its "determination" within 20 working days (or 30 working days in "unusual circumstances").[3]

But what constitutes a "determination" so as to trigger the exhaustion requirement? That is the critical question here. CREW argues that, in order to make a "determination" within the meaning of Section 552(a)(6)(A)(i), an agency need not go so far as to produce the responsive documents but it must at least inform the requester of the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents. By contrast, the FEC contends that, in order to make a "determination," an agency needs simply to express a future intention to produce non-exempt documents and claim exemptions. That question has never been resolved in this Court.[4]

---

[3] Of course, the duties that FOIA imposes on agencies – including the requirement that an agency make a "determination" within 20 working days, or 30 working days in "unusual circumstances" – apply only once an agency has received a proper FOIA request. A proper request must "reasonably describe[]" the records sought and must comply with the agency's published procedures, including the agency's schedule of fees. 5 U.S.C. § 552(a)(3)(A). The agency's threshold decision that a proper request has been filed is obviously not the agency's "determination" whether to comply, and neither the FEC nor the Department of Justice argues otherwise.

[4] Despite the significant amount of FOIA litigation in this Court, we have not had occasion to previously decide this important procedural question, in part because individual FOIA requesters apparently have not thought it worth the candle to press this point, rather than to work with the agency in an effort to obtain the requested documents. In *Spannaus v. DOJ*, the Court stated that an

We agree with CREW's reading of the statute. The statute requires that, within the relevant time period, an agency must determine whether to comply with a request – that is, whether a requester will receive all the documents the requester seeks. It is not enough that, within the relevant time period, the agency simply decide to later decide. Therefore, within the relevant time period, the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions.

Four aspects of the statute lead us to that interpretation, and help demonstrate that the FEC's contrary interpretation is incorrect.

*First*, the statute requires that an agency, upon making a "determination" whether to comply with a FOIA request, immediately "notify the person making such request of such determination *and the reasons therefor*." 5 U.S.C. § 552(a)(6)(A)(i) (emphasis added). The statutory

---

agency failed to make a "determination" under Section 552(a)(6)(A)(i) when it merely acknowledged a FOIA request and indicated that the request would be forwarded to another office. 824 F.2d 52, 59 n.9 (D.C. Cir. 1987). But that case did not analyze or describe the contours of what constituted a "determination." Similarly, in *Oglesby v. Department of the Army*, the Court specifically declined to decide whether a response that the agency was processing the request was a "determination" for purposes of Section 552(a)(6)(A)(i). *See* 920 F.2d 57, 69 (D.C. Cir. 1990). The Court also declined to decide whether a response that the agency would go forward with the search absent any problems or any need for additional information was a "determination." *Id.*

requirement that the agency provide "the reasons" for its "determination" strongly suggests that the reasons are particularized to the "determination" – most obviously, the specific exemptions that may apply to certain withheld records. The statutory requirement would not make a lot of sense if, as the FEC argues, the agency were merely required to state within 20 working days its future intent to eventually produce documents and claim exemptions. After all, how could the agency articulate reasons for non-compliance when it had not yet decided whether to comply (that is, whether to produce all of the requested documents)?

*Second*, the statute requires that the agency immediately notify the requester of the right "to appeal to the head of the agency any adverse determination." *Id.* The requirement that the agency notify the requester about administrative appeal rights further indicates that the "determination" must be substantive, not just a statement of a future intent to produce non-exempt responsive documents. Otherwise, this right of administrative appeal would make little sense because there would be nothing to appeal at the time the agency makes its supposed "determination" in response to a properly filed FOIA request.

This critical point both highlights and unravels the maneuver that the FEC (backed by the Department of Justice) is attempting here. Under the FEC's theory, an agency could respond to a request within 20 working days in terms not susceptible to immediate administrative appeal – by simply stating, in essence, that it will produce documents and claim exemptions over withheld documents in the future. Then, the agency could process the request at its leisure, free from any timelines. All the while, the agency's actions would remain immune from suit because the requester would not yet have

been able to appeal and exhaust administrative appeal remedies. Therein lies the Catch-22 that the agency seeks to jam into FOIA: A requester cannot appeal within the agency because the agency has not provided the necessary information. Yet the requester cannot go to court because the requester has not appealed within the agency. Although the agency may desire to keep FOIA requests bottled up in limbo for months or years on end, the statute simply does not countenance such a system, as we read the statutory text.

This case illustrates how the FEC's legal position does not square with the statute. The FEC now claims that it made a "determination" in March 2011, within 20 working days of CREW's FOIA request. Yet the FEC did not inform CREW of its appeal rights until June 23, more than 75 working days after the FOIA request. The FEC was right that CREW did not have any decision to appeal until the FEC's June 23rd letter stated that the agency had withheld some documents under multiple FOIA exemptions. But that fact also necessarily shows that the FEC had not made a "determination" in March, given that the statute indicates that a "determination" must be subject to immediate appeal. By arguing that it made a "determination" in March and simultaneously saying that nothing could be administratively appealed until June, the FEC's position on CREW's request amply demonstrates the impermissible Catch-22 it seeks to enshrine in the law.[5]

---

[5] In order to facilitate an administrative appeal, an agency must indicate the scope of the documents it intends to produce and the exemptions it will claim. An agency is not required to produce a *Vaughn* index – which district courts typically rely on in adjudicating summary judgment motions in FOIA cases. *See, e.g.*, DEPARTMENT OF JUSTICE, GUIDE TO THE FREEDOM OF

*Third*, the statute creates an "unusual circumstances" safety valve that permits an agency to extend the 20-working-day period for response by up to 10 additional working days. "Unusual circumstances" are defined to encompass only "the need to search for and collect the requested records" from separate locations; "the need to search for, collect, and appropriately examine a voluminous amount" of documents; and "the need for consultation" with other agencies. *Id.* § 552(a)(6)(B)(iii). The statutory list of circumstances that permit an agency to extend the 20-working-day timeline to make a "determination," including collecting and examining numerous or distant documents, clearly contemplates that the agency must actually gather the responsive documents and determine which it will produce and which it will withhold. The agency cannot make the requisite "determination" by

---

INFORMATION ACT 789 (2009 ed.) (It "is well settled that a requester is not entitled to receive [a *Vaughn* index] during the administrative process."); *NRDC, Inc. v. NRC*, 216 F.3d 1180, 1190 (D.C. Cir. 2000) (rule that agency must provide a *Vaughn* index in FOIA litigation "is a rule that governs litigation in court and not proceedings before the agency"); *Bangoura v. Department of the Army*, 607 F. Supp. 2d 134, 143 n.8 (D.D.C. 2009) ("Defendant was under no obligation to provide Plaintiff with a *Vaughn* Index before the filing of this action.") (internal quotation marks and alteration omitted); *Schwarz v. Department of Treasury*, 131 F. Supp. 2d 142, 147 (D.D.C. 2000) ("[T]here is no requirement that an agency provide a 'search certificate' or a 'Vaughn' index on an initial request for documents. The requirement for detailed declarations and Vaughn indices is imposed in connection with a motion for summary judgment filed by a defendant in a civil action pending in court.") (footnote omitted); *cf. Mead Data Central, Inc. v. Department of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) (although "the objective of the *Vaughn* requirements . . . is equally applicable to proceedings within the agency," no error where those requirements were satisfied in district court proceedings).

simply stating its future intent to produce some non-exempt documents.

Moreover, there would be no need for the unusual circumstances safety valve if, as the FEC argues, the usual 20-working-day timeline merely required an agency to make a general promise to produce non-exempt documents and claim exemptions in the future. An agency could always provide that kind of promise within 20 working days of receiving a FOIA request. The number of documents to be examined and the difficulty of gathering those documents, for example, have no bearing on the agency's ability to provide such a formulaic response to requesters within 20 working days. Thus, the FEC's reading of FOIA would render the unusual circumstances safety valve a worthless addendum to the statute. Such a result strongly suggests that the agency's interpretation is impermissible. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("It is . . . a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute.") (internal quotation marks omitted).

Put simply, the unusual circumstances provision to extend the time for making a "determination" makes sense only if the statute contemplates that responsive documents must be collected and examined, and decisions made about which to produce, in order for the agency to make a "determination."

*Fourth*, the statute provides that, once in court, an agency may further extend its response time by means of the "exceptional circumstances" safety valve. That provision says that if exceptional circumstances exist and an agency "is exercising due diligence in responding to the request," a court

may grant the agency "additional time to *complete its review* of the records." 5 U.S.C. § 552(a)(6)(C)(i) (emphasis added). Like the unusual circumstances provision, the exceptional circumstances provision presumes that an agency operating outside the 20-working-day window needs more time to finish gathering and reviewing documents, and more time to decide what to produce and to withhold. The agency would not need more time merely to state a preliminary intention to produce whatever non-exempt records are eventually found. Again, the FEC's theory of the statute would negate any need for the exceptional circumstances provision. The fact that the FEC's interpretation renders the exceptional circumstances provision unnecessary further confirms that Congress created a different statute from the one the FEC describes.

All of those statutory provisions together reinforce the conclusion that a "determination" under Section 552(a)(6)(A)(i) must be more than just an initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future. Rather, in order to make a "determination" and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse.[6]

---

[6] Our opinion today does not affect an agency's ability to issue, where appropriate, a "Glomar" response to a FOIA request. Because of security or privacy concerns, a "Glomar" response refuses to confirm or deny that the requested records exist. *See Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976).

To be clear, a "determination" does not require actual *production* of the records to the requester at the exact same time that the "determination" is communicated to the requester. Under the statutory scheme, a distinction exists between a "determination" and subsequent production. *See Spannaus v. DOJ*, 824 F.2d 52, 59 n.7 (D.C. Cir. 1987). As to actual production, FOIA requires that the agency make the records "promptly available," which depending on the circumstances typically would mean within days or a few weeks of a "determination," not months or years. 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i). So, within 20 working days (or 30 working days in "unusual circumstances"), an agency must process a FOIA request and make a "determination." At that point, the agency may still need some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce. The agency must do so and then produce the records "promptly." Our reading of "determination" thus neatly complements the requirement that documents be made "promptly available."

In short, unlike the FEC's theory, our reading of "determination" sensibly harmonizes the default 20-working-day timeline, the unusual circumstances safety valve, the exceptional circumstances safety valve, and the prompt production requirement. Together, those provisions create a comprehensive scheme that encourages prompt request-processing and agency accountability. To summarize: An agency usually has 20 working days to make a "determination" with adequate specificity, such that any withholding can be appealed administratively. 5 U.S.C. § 552(a)(6)(A)(i). An agency can extend that 20-working-day timeline to 30 working days if unusual circumstances delay the agency's ability to search for, collect, examine, and

consult about the responsive documents. *Id.* § 552(a)(6)(B). Beyond those 30 working days, an agency may still need more time to respond to a particularly burdensome request. If so, the administrative exhaustion requirement will not apply. But in such exceptional circumstances, the agency may continue to process the request, and the court (if suit has been filed) will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request. *Id.* § 552(a)(6)(C).[7] If the agency does not adhere to FOIA's explicit timelines, the "penalty" is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court. This scheme provides an incentive for agencies to move quickly but recognizes that agencies may not always be able to adhere to the timelines that trigger the exhaustion requirement.[8]

To all of this, the FEC's overarching retort is that it would be "a practical impossibility for agencies to process all [FOIA] requests completely within twenty days." FEC Br. 34. We agree entirely with the FEC on this point. We are intimately familiar with the difficulty that FOIA requests pose for executive and independent agencies. But contrary to the FEC's suggestion, our reading of the statute recognizes and

---

[7] A district court may of course consider FOIA cases in the ordinary course. There is no statutory mandate for district courts to prioritize FOIA cases ahead of other civil cases on their dockets.

[8] In fact, several statutory provisions acknowledge that some requests may require significant processing time to search for, collect, examine, and consult about documents before a "determination" can be made. For example, FOIA provides that agencies may establish multitrack procedures based on the amount of work or time a request entails, and FOIA requires that agencies establish a tracking system for requests that will take longer than 10 days to process. *See* 5 U.S.C. § 552(a)(6)(D), (a)(7).

accommodates that reality. As our opinion today emphasizes, the 20-working-day period (actually 30 working days with the unusual circumstances provision) is the relevant timeline that the agency must adhere to if it wants to trigger the exhaustion requirement before suit can be filed. The unusual circumstances and exceptional circumstances provisions allow agencies to deal with broad, time-consuming requests (or justifiable agency backlogs) and to take longer than 20 working days to do so. To reiterate, if the agency does not adhere to FOIA's explicit timelines, the "penalty" is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court.

It is true that the statute does not allow agencies to keep FOIA requests bottled up for months or years on end while avoiding any judicial oversight. But Congress made that decision. If the Executive Branch does not like it or disagrees with Congress's judgment, it may so inform Congress and seek new legislation. *See Milner v. Department of the Navy*, 131 S. Ct. 1259, 1271 (2011) ("All we hold today is that Congress has not enacted the FOIA exemption the Government desires. We leave to Congress, as is appropriate, the question whether it should do so.").

\* \* \*

Because the FEC did not make and communicate a "determination" within the meaning of 5 U.S.C. § 552(a)(6)(A)(i) within 20 working days of receiving CREW's FOIA request, CREW is deemed to have exhausted its administrative appeal remedies under Section 552(a)(6)(C)(i), and its suit may proceed. We reverse

the District Court's grant of summary judgment to the FEC, and we remand for further proceedings.

*So ordered.*