SRINIVASAN, Circuit Judge, dissenting:
The Freedom of Information Act serves the important aim of promoting the timely release of requested government records. Ordinarily, when an agency completes its review of a request and releases responsive records during the pendency of a FOIA action, the case becomes moot. The case is not moot, however, if the agency has a general, ongoing policy or practice of violating FOIA. In that event, the court can enjoin the unlawful agency policy or practice going forward.
The complaint in this case claims that the Secret Service has a policy or practice of unlawfully withholding the release of requested records in violation of FOIA. The question we face is whether the complaint's allegations, if true, establish a policy or practice of violating FOIA. My colleagues conclude that the answer is yes. I respectfully disagree.
This case involves nineteen requests for records submitted to the Secret Service by Judicial Watch. The complaint's salient allegations are that (i) the agency failed to determine whether it would produce the requested records within a twenty-day period *791 set out in the statute, (ii) several months had elapsed without any production of records by the time this suit was filed, and (iii) the agency, in past cases involving the same sorts of requests by Judicial Watch, ultimately produced the records after the filing of a suit. Do those allegations make out a policy or practice of FOIA violations? In my view, they do not.
With regard to the statute's default twenty-day period for determining whether to produce requested records, an agency's failure to make that determination within twenty days is not an actionable violation of FOIA. Nor was it necessarily a violation of FOIA that the requests were still pending before the agency when the suit was filed. Indeed, the statute expressly contemplates that an agency could take several months to process a FOIA request, and agencies regularly-and lawfully-take that long to determine whether to produce requested records. And while it may be true that the Secret Service has previously produced records after Judicial Watch filed suit (and did so again in this case), the mere fact that an agency produces records following the initiation of judicial proceedings tells us nothing about whether the non-production of the documents before that point violated the statute. In short, the allegations in the complaint, even if true, are consistent with lawful conduct under FOIA.
The complaint in this case therefore fails to allege a policy or practice of violating FOIA. By deciding otherwise and allowing this action to go forward, the court today enables FOIA suits to proceed past the pleadings in a broad range of situations in which an agency's practices are fully in keeping with the statute's requirements. Agencies often (and lawfully) take significantly longer than twenty days to process a FOIA request. But an agency that does so, under the court's rationale today, would routinely be subject to an ostensibly viable claim that it has a policy or practice of violating the statute. The statute, in my respectful view, does not countenance that result.
I.
A.
To understand why the complaint in this case fails to allege a policy or practice of violating FOIA, it is necessary to review in some detail the statute's provisions governing the processing of a request for records. Upon a proper request for records submitted by "any person," FOIA generally calls for a federal agency to make the requested records "promptly available" to the requester unless the records fit within one of the statutory exemptions. See 5 U.S.C. § 552(a)(3)(A). Depending on the nature of a request, identifying and examining responsive records, and determining whether an exemption applies, can take considerable time. FOIA thus prescribes no fixed timeframe within which an agency must produce non-exempt records. Rather, the statute establishes a set of procedures for agencies (and requesters) to follow in furtherance of the general mandate to make non-exempt records promptly available.
Whenever the agency will take longer than ten days to process a request, the statute requires the agency to assign the requester an "individualized tracking number." Id. § 552(a)(7)(A). The tracking number enables the requester to obtain "information about the status of [her] request" through a "telephone line or Internet service" set up by the agency. Id. § 552(a)(7)(B). The "status" information available to the requester must include "an estimated date on which the agency will complete action on the request." Id. § 552(a)(7)(B)(ii). A requester, then, can *792 readily ascertain when the agency anticipates "complet[ing] action on the request." Id.
How long might that take? As a default matter, FOIA provides that an agency "shall ... determine within 20 [business] days ... whether to comply with [a] request" for records, and "shall immediately notify" the requester "of such determination and the reasons therefor." Id. § 552(a)(6)(A)(i). That "determination" marks the culmination of an agency's processing of a FOIA request-i.e., the determination by the agency whether it will produce the requested records or instead will withhold any production of records (because, for instance, a FOIA exemption applies or there are no responsive records).
The statute does not envision that an agency invariably will be able to process a request within the twenty-day period. That "timeline is not absolute." Citizens for Responsibility & Ethics in Wash. (CREW) v. FEC , 711 F.3d 180, 184 (D.C. Cir. 2013). It is instead only a "default." Id. at 189. After all, "it would be a practical impossibility for agencies to process all FOIA requests completely within twenty days." Id. (brackets and internal quotation marks omitted).
For instance, in the event of certain "unusual circumstances" specified in the statute, the agency can extend the time period for processing a request by an additional ten business days (or thirty days total). 5 U.S.C. § 552(a)(6)(B)(i). (Unusual circumstances exist when a request: requires accessing records in an off-site location, involves a "voluminous amount" of records, or implicates the interests of multiple agencies or components. Id. § 552(a)(6)(B)(iii).) The statute, moreover, affirmatively contemplates that those "unusual circumstances" could cause the agency to take longer than thirty days to process a request. In that event, the agency must give the requester the opportunity to limit the scope of her request or work with the agency to develop an alternative time frame for processing it. Id. § 552(a)(6)(B)(ii).
In addition, apart from the enumerated "unusual circumstances," the statute separately allows an agency to show that "exceptional circumstances" (as opposed to "unusual circumstances") exist, and that the agency "is exercising due diligence in responding to the request." Id. § 552(a)(6)(C)(i). In that event, the agency is allowed "additional time to complete its review of the records." Id. "Exceptional circumstances" can "include a delay that results from a predictable agency workload of requests" if "the agency demonstrates reasonable progress in reducing its backlog of pending requests." Id. § 552(a)(6)(C)(ii). The statute thus expressly envisions that an agency could have a backlog of FOIA requests preventing it from processing a new request within twenty days, and that the agency would be allowed additional time as long as it is making reasonable progress in reducing the backlog.
The "exceptional circumstances" determination is made by a court after a requester initiates the statute's process of judicial review. See id. § 552(a)(6)(C). FOIA vests district courts with jurisdiction to conduct a de novo review of an agency's processing of a request, and to enjoin the agency from any "improper[ ] withh[olding]" of responsive records. Id. § 552(a)(4)(B). Ordinarily, a requester must exhaust her remedies with the agency before bringing the matter to court. See Wilbur v. CIA , 355 F.3d 675, 677 (D.C. Cir. 2004). But a requester is deemed to have constructively exhausted her administrative remedies if an agency takes longer than the default twenty-day period to process her request.
*793 5 U.S.C. § 552(a)(6)(C) ; see CREW , 711 F.3d at 182, 185.
At that point, the requester, if she wishes, can proceed directly to court rather than continue to pursue the matter within the agency. Once in court, the agency has the burden to justify any decision to withhold responsive documents, 5 U.S.C. § 552(a)(4)(B), or to show that, due to exceptional circumstances (potentially including a backlog of FOIA requests), the agency needs additional time to process a request, id. § 552(a)(6)(C).
B.
If an agency produces the requested records while the matter is pending in court, the aim of the requester's claim for the records would have been realized and her claim generally becomes moot. See Payne Enters., Inc. v. United States , 837 F.2d 486, 490-91 (D.C. Cir. 1988). In the ordinary case, then, an agency's production of the requested records will occasion a dismissal of the requester's suit.
As our court recognized in Payne , however, an agency's production will not "moot a claim" if "an agency policy or practice will impair the party's lawful access to information in the future." Id. at 491 (emphasis omitted). A requester thus can avoid dismissal on mootness grounds by plausibly alleging: first, that the "agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA," and, second that the agency's policy or practice will continue to injure the requester in the future. Id. In other words, a requester can maintain her action, notwithstanding the agency's production of the requested records, if the agency follows a policy or practice of unlawfully withholding records under FOIA and might continue to do so absent judicial intervention. Otherwise, an agency could have a policy of unlawfully refusing to release responsive documents, produce the documents when (and only when) sued in order to moot a given case, and then resume its unlawful withholding policy thereafter.
We have recognized the viability of a requester's policy-or-practice claim on just two prior occasions. Both cases involved an agency's allegedly unlawful withholding of documents based on an erroneous assertion of a FOIA exemption. See id. at 487 ; Newport Aeronautical Sales v. Dep't of Air Force , 684 F.3d 160, 163-64 (D.C. Cir. 2012). In each case, we allowed the requester to proceed on a policy-or-practice claim notwithstanding the agency's production of the requested documents. We did so because of the risk that the agencies would continue to withhold responsive records in the future in reliance on an inapplicable statutory exemption.
II.
Unlike the requesters in Payne and Newport , Judicial Watch does not contend that the Secret Service has a policy or practice of withholding requested records based on the agency's erroneous invocation of a FOIA exemption. Rather, Judicial Watch alleges that the Secret Service "has a policy and practice of ... regularly failing or refusing to produce requested records or otherwise demonstrate that requested records are exempt from production within the time period required by FOIA or at least within a reasonable period of time." Compl. ¶ 22. Judicial Watch's claim of an unlawful agency practice thus pertains solely to the time taken by the agency to process its records requests: there is no allegation that the agency is acting unlawfully in any other way, such as by refusing to produce records in invalid reliance on an inapplicable exemption.
*794 In its complaint, Judicial Watch alleges the following facts in support of its claim that the Secret Service has a policy or practice of violating FOIA. Between July 2014 and August 2015, Judicial Watch submitted the nineteen FOIA requests at issue in this case. The statute's default twenty-day period elapsed without any determination by the Secret Service whether it would comply with the requests. By the time Judicial Watch filed suit (in November 2015), the agency had yet to complete its processing of the requests. And, on five previous occasions in which the Secret Service had failed to make a determination on Judicial Watch's request within twenty days, the agency produced the requested records after Judicial Watch filed suit. Compl. ¶¶ 7-9, 13-14.
Those factual allegations, in my view, do not state a claim that the Secret Service has a policy or practice of violating FOIA. The complaint advances two potential theories of how the Secret Service has engaged in a policy or practice of violating FOIA: first, the agency repeatedly failed to make determinations on Judicial Watch's requests "within the time period required by FOIA," Compl. ¶ 22-i.e., the default twenty-day period, § 552(a)(6)(A) ; and second, the agency failed to produce responsive documents over a sixteen-month period between the submission of the first request and the filing of the suit. Neither of those theories states a claim for relief.
A.
Judicial Watch first argues that the Secret Service repeatedly failed to make determinations on its requests within twenty days, as with the nineteen requests at issue in this case and the five previous cases identified in the complaint. But the lapse of the default twenty-day period is not itself an actionable violation of FOIA. A repeated lapse of the twenty-day period, then, cannot form the predicate of a viable policy-or-practice claim.
The failure to process a FOIA request within twenty days, while not itself an actionable FOIA violation, does have a consequence under the statute. In that event, the requester can bypass the normal requirement to seek administrative review of an adverse determination on her request and instead proceed directly to district court. See 5 U.S.C. § 552(a)(6)(A)(i)-(ii), (C)(i) ; see CREW , 711 F.3d at 185, 189-90. The court then would conduct a de novo review of the agency's processing of the request. See 5 U.S.C. § 552(a)(4)(B).
The court would not, though, grant judgment in the requester's favor merely because the default twenty-day period had elapsed without a determination by the agency. Rather, the statute presupposes that the court could recognize that the agency should be given additional time to process the request. That would be warranted if, as we have seen, the agency shows it "is exercising due diligence in responding to the request" and is making "reasonable progress in reducing [a] backlog of pending requests." Id. § 552(a)(6)(C)(i),(ii). Given that the agency can lawfully take additional time to process a request, the mere lapse of the twenty-day period does not establish that the agency has violated FOIA.
Other provisions in the statute reinforce that a lapse of the twenty-day period cannot itself amount to a FOIA violation. The requirement to provide a tracking number for any request "that will take longer than ten days to process," id. § 552(a)(7)(A), presupposes that an agency might often require more than twenty days to complete its review. Otherwise, a tracking number would have relevance only for a request that the agency anticipates will take more *795 than ten days but less than twenty days, an implausible reading of the statute.
Indeed, FOIA expressly contemplates that an agency could take hundreds of days to process requests. The statute calls for each agency to submit an annual report to the Attorney General setting out, among other things, the number of requests to which the agency made a determination within specified ranges of business days. Each agency must, for example, identify the number of requests for which it made a "determination within a period up to and including 20 days, and in 20-day increments up to and including 200 days." Id. § 552(e)(1)(G)(i). The agency must also specify the number of requests it processed within a period of 200-300 business days, 300-400 business days, and greater than 400 business days. Id. § 552(e)(1)(G)(ii)-(iv). Congress thus expressly envisioned that an agency might, with some regularity, take several hundred days or more-not just twenty days-to process a request.
Judicial Watch then errs in supposing that a lapse of the default twenty-day timeframe for processing a request constitutes an actionable violation of FOIA. It follows that the complaint cannot state a viable policy-or-practice claim based on the Secret Service's failure to make a determination within the twenty-day period for the requests at issue.
B.
Judicial Watch's complaint also states that the Secret Service has a policy or practice of failing to produce requested records "within a reasonable period of time." Compl. ¶ 22. That contention perhaps could be construed to allege that, even if the lapse of the twenty-day period does not itself establish a FOIA violation, the Secret Service's failure to make determinations within a "reasonable" time (beyond twenty days) infringed FOIA's overarching mandate to make records "promptly available." Id. § 552(a)(3)(A). That, however, is a legal conclusion, which we do not accept as true. Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The legal conclusion instead must rest on plausible factual allegations that, if true, would establish the unlawfulness of the agency's action. Id.
Judicial Watch alleges no such facts here. Judicial Watch contends that, by the time it filed suit in November 2015, the Secret Service had yet to produce records responsive to nineteen requests submitted between July 2014 and August 2015. See Compl. ¶¶ 8, 14. The requests had been pending for between 54 and 329 business days. Id. Ex. A. The complaint contains no allegations suggesting why those time periods might be considered unreasonably-much less unlawfully-long. Rather, even assuming Judicial Watch's allegations are true, the Secret Service might well have been working through the nineteen requests in a reasonable and lawful manner. Indeed, the statute, as explained, expressly envisions that agencies may take hundreds of days or more to process requests. See 5 U.S.C. § 552(e)(1)(G)(i)-(iv).
Consider in that regard how the response times for the requests in this case stack up when compared with the Secret Service's general processing of FOIA requests in 2015, the year the complaint was filed. The Secret Service processed roughly 1200 requests that year. U.S. Dep't of Homeland Security, 2015 Freedom of Information Act Report to the Attorney General of the United States 13, tbls. VII.C(1)-(2) (Feb. 2016), https://go.usa.gov/xXQvf (hereinafter 2015 DHS FOIA Report ). Almost all (roughly 90%) of the requests processed in 2015 were categorized as "complex." Id. (1050 complex requests versus 145 simple requests). And the average *796 processing time for those requests was 317 days, with the response time for roughly one out of every four of the requests exceeding 300 business days. Id. at 12-13, tbls. VII.B, VII.C(2).
Considered in that context, the time for which the nineteen requests in this case had been pending when Judicial Watch filed its suit (54 to 329 business days) is in step with the Secret Service's general handling of FOIA requests. Nor is the Secret Service some sort of conspicuous outlier among DHS components in its processing times. See id. at 12 tbl. VII.B. (Contrary to my colleagues' suggestion, Maj. Op. 784; Conc'g Op. 788-89, I do not necessarily assume that the requests in this case would be categorized as "complex," although almost all requests processed by the Secret Service were so classified. Rather, in identifying a suitable comparison point to help highlight that processing times of 54 to 329 days do not alone demonstrate a FOIA violation, it is appropriate to reference the average processing time for the largest group of requests for which there is available data, a group that makes up some 90% of all requests.)
Insofar as a FOIA requester can make out a viable policy-or-practice claim based solely on an agency's response times, then, Judicial Watch needed to allege something more than that: it submitted multiple FOIA requests, it filed suit when permitted by the statute, and its requests had been pending for some 54 to 329 business days at that time. Those allegations are consistent with lawful conduct by the agency. They thus do not show a policy or practice of violating FOIA.
C.
My colleagues in the majority nonetheless conclude that Judicial Watch's complaint states a valid policy-or-practice claim. They reason that the complaint "alleg[es] prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements." Maj. Op. 780.
Which of "FOIA's requirements" is the Secret Service plausibly alleged to have ignored? The only "requirement" on which the complaint relies is the default twenty-day period for processing a request. For the reasons already set out, however, the lapse of that period does not amount to an actionable violation of FOIA. If a breach of the twenty-day period were itself an actionable violation of FOIA, then a requester could immediately file suit after the twenty-day period passes-on day twenty one, for instance-and qualify right away for the entry of judgment in her favor and an award of attorneys' fees as a substantially-prevailing party. See 5 U.S.C. § 552(a)(4)(E). That cannot be correct.
As for my colleagues' assertion that Judicial Watch experienced "prolonged" delays in obtaining responsive records, Maj. Op. 780-81, there is no explanation of why the response periods alleged in the complaint might cross the line from permissible to unlawfully "prolonged." The lapse of the default twenty-day period, as we have seen, does not itself establish that the agency's response was unlawfully prolonged. If so, then at what point (beyond twenty days) did the agency's response times for the requests in this case become unlawfully prolonged? My colleagues do not say. And it is unclear how a district court is to make that determination.
For instance, are the response times "prolonged" because, for three of the nineteen requests in the case, more than 300 business days had elapsed as of the complaint without a determination by the agency? See Compl. Ex. A. The Secret Service was doing no worse on that metric *797 with regard to the nineteen requests at issue than it did for all requests it processed in 2015. See DHS 2015 FOIA Report 13, tbl. VII.C(2) (253 of the roughly 1200 total responses took more than 300 business days to process). And if an agency violates FOIA whenever it takes more than 300 business days to respond to a request, Customs and Border Patrol would have violated the statute on that basis alone more than 20,000 times in 2015. See id.
In an effort to bolster the idea that the Secret Service's response times in this case at some point became unduly prolonged, my concurring colleague would infer that the requests at issue are "wholly straightforward." Conc'g Op. 788. The complaint, though, alleges (or says) nothing about the comparative complexity of Judicial Watch's requests. At any rate, regardless of whether the Secret Service ultimately prevails in its competing assertion that Judicial Watch's requests are "labor intensive," Campbell Decl. at ¶ 11 (D.D.C. Mar. 18, 2016), ECF No. 16-1, neither the concurring opinion nor the court's opinion identifies when (beyond twenty days) response times become sufficiently "prolonged" such that the time periods alleged in a complaint alone are enough to make out a policy-or-practice claim.
In addition to asserting that the Secret Service's response times were unduly "prolonged," my colleagues also say that the response times were "unexplained." Maj. Op. 780-81. In that regard, my colleagues presumably rely on Judicial Watch's indication that, for a number of the requests in the case, the Secret Service made no communication to Judicial Watch beyond giving a tracking number. See Compl. ¶ 11 & Ex. A.
But the purpose of requiring an agency to give an "individualized tracking number" for requests that will take more than ten days to process is to arm the requester with an efficient means of obtaining "information about the status of [her] request," including an estimated date on which the agency will finish processing the request. 5 U.S.C. § 552(a)(7)(B). That is an important form of communication by the agency to the requester, and there is no indication that it was unavailable to Judicial Watch (or any allegation that it was somehow deficient).
If a particular request implicates one of FOIA's three enumerated "unusual circumstances" and the agency will take more than thirty business days to process it, the statute calls for the agency to give the requester an opportunity either to limit the request's scope or to arrange for an alternative timeframe for processing it. Id. § 552(a)(6)(B)(ii) ; see Conc'g Op. 787. But the requirement to engage in that dialogue arises only if one of the enumerated "unusual circumstances" exists. And there is no suggestion by Judicial Watch-much less any allegation in the complaint-that any of those circumstances might exist in this case (or, for that matter, that the agency fell short in any resulting obligation to initiate the contemplated dialogue).
My colleagues, finally, assume that the Secret Service has a practice of responding to Judicial Watch's requests only "after it has filed a lawsuit." Maj. Op. 780. "[O]nly at that point," my colleagues submit, "has the Secret Service conducted a search to determine whether records can be made available or are exempt from disclosure, or engaged in consultations with Judicial Watch." Id.
I assume it would violate FOIA for an agency to adhere to a practice of refusing to process a request unless the requester brings a lawsuit. I do not read the complaint to allege that the Secret Service has *798 any such policy, however. To be sure, the complaint references five prior cases in which the Secret Service produced records after Judicial Watch filed suit, and the agency in this case produced records responsive to the nineteen requests after Judicial Watch brought this action. See Compl. ¶¶ 7, 9, 14. But the fact that the agency eventually produced records after a lawsuit of course hardly means that it produced the records only because of the lawsuit, much less that it did no work at all to process the request until the suit was filed. See Iqbal , 556 U.S. at 680-82, 129 S.Ct. 1937.
Indeed, assuming (as we must) that the Secret Service gave Judicial Watch a tracking number upon receiving the requests, see Compl. ¶ 10, the agency also would have "provide[d] information about the status of [the] request[s]" including an "estimated date" by which it would "complete action" on them, 5 U.S.C. § 552(a)(7)(B). That means the agency necessarily would have to work on the requests regardless of any (as yet unfiled) suit. The complaint itself thus negates any notion that the agency did no work on the requests until Judicial Watch filed suit.
The complaint therefore does not allege-and at least does not plausibly allege-that it is the Secret Service's policy to withhold processing or production of documents unless the requester sues: to say that documents were produced after a suit is not to say that there would have been no processing or production absent the suit. Cf. Bell Atl. Corp. v. Twombly , 550 U.S. 544, 556-57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (while parallel conduct may be consistent with an illicit agreement, allegations about parallel conduct do not substantiate otherwise conclusory allegation of illicit agreement). Judicial Watch in fact conceded in the district court that the time taken by the agency to process the requests could have been due to a "host of causes," including agency backlog. Pl.'s Opp'n to Mot. J. on Pldgs. 6-7 (D.D.C. Mar. 12, 2016), ECF No. 14.
My colleagues reason that, regardless of whether the Service Service's response times are caused by agency recalcitrance or justifiable backlog, the delay has the effect of making it a "practical requirement" for Judicial Watch to sue in order to obtain records. Maj. Op. 780-81. But the Secret Service's conduct, even assuming the truth of the allegations in the complaint, has not required Judicial Watch to sue.
Rather, the statute affords requesters a choice: if twenty days comes and goes without a determination, the requester may check the tracking information and decide to wait until the estimated completion date arrives, or she may choose to involve a court in an effort to set a different timeline for production. That is how the statute is designed to work. And nothing in the complaint suggests that the process did not work that way here. The remedial process, along with the other provisions of the statute, aim to advance FOIA's ultimate mandate of prompt production of non-exempt records. An agency does not violate that mandate when the statutorily-prescribed process works as it was supposed to.
* * * * *
The evident result of the court's holding today is that any requester who alleges that she made more than one request for records, that she received no determination within twenty days, and that she obtained no records before suing, can state a policy or practice claim based on agency delay. That would be so even though the agency may be well on its way to production, and even though there is no plausible allegation of agency recalcitrance. In any such instance, disclosure of the requested *799 records in accordance with a court-ordered schedule would not moot the case. Rather, a district court would be charged with examining how "an agency has organized its records management systems" and "monitor[ing] when necessary an agency's progress in adjusting its records management systems." Maj. Op. 784. That holding implicates not only the Secret Service's handling of the requests in this case, but also the processes of numerous governmental agencies who routinely take longer than twenty days to process requests given the practical impossibility of invariably meeting that timeframe. See CREW , 711 F.3d at 189.
In my view, neither the terms, structure, nor purpose of FOIA demands that result. I of course do not take lightly FOIA's highly important mandate that agencies promptly disclose non-exempt records. Nor do I discount the possibility that various agencies are not processing FOIA requests as quickly as they might. The annual reports required by Congress presumably would shed light on poorly performing agencies. FOIA also provides for an investigatory proceeding by the Office of Special Counsel whenever a court issues written findings that "circumstances surrounding [an agency's] withholding raise questions whether agency personnel acted arbitrarily or capriciously." 5 U.S.C. § 552(a)(4)(F)(i). And if an agency has a practice of unlawfully withholding the disclosure of responsive records-say, by persistently invoking an inapplicable exemption-it will be subject to an injunction barring the practice. See Payne , 837 F.2d at 490-92.
In this case, however, the Secret Service's actions, as alleged in the complaint, do not reflect a policy or practice of violating FOIA. Rather, the allegations are consistent with lawful conduct on the agency's part. As a result, the case became moot when the agency finished processing the requests and disclosed responsive documents pursuant to the schedule ordered by the district court. I thus respectfully dissent from my colleagues' disposition of this appeal.